IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| ALLIANCE FOR THE WILD ROCKIES, IDAHO SPORTING CONGRESS, and NATIVE ECOSYSTEMS COUNCIL | |
| Plaintiffs, | Case No. 1:15-cv-00193-EJL |
| vs. | MEMORANDUM DECISION AND ORDER |
| UNITED STATES FOREST SERVICE, THOMAS KIDWELL, Chief of the Forest Service, KEITH LANNONM, Forest Supervisor of the Payette National Forest, NORA RASURE, Regional Forester for Region 4 of the U.S. Forest Service, | |
| Defendants, | |
| and | |
| ADAMS COUNTY, a political subdivision of the State of Idaho, and PAYETTE FOREST COALITION, an unincorporated Idaho association, | |
| Defendant-Intervenors. | |

## INTRODUCTION

Pending before the Court in the above-entitled matter is Plaintiffs' Motion for Temporary Restraining Order. (Dkt. 45.)[1] The parties have filed their responsive briefing and the matter is ripe for the Court's review. (Dkt. 48, 49, 52.) Having fully reviewed the record herein, the Court finds that the facts and legal arguments are adequately presented in the briefs and record. Accordingly, in the interest of avoiding further delay, and because the Court conclusively finds that the decisional process would not be significantly aided by oral argument, this Motion shall be decided on the record before this Court without oral argument.

---

[1] Also pending in this matter are the parties' Cross-Motions for Summary Judgment. (Dkt. 33, 36, 38.) The Court will take up those Motions in due course in a separate order.

**MEMORANDUM DECISION AND ORDER - 1**

**FACTUAL AND PROCEDURAL BACKGROUND**

Plaintiffs, Alliance for the Wild Rockies, Idaho Sporting Congress, and Native Ecosystems Council, are organizations interested in conservation and preservation of the natural and native resources of public lands. (Dkt. 25, 33.) The originally named Defendants are the relevant federal agencies and individuals responsible for managing the Payette National Forest (collectively Federal Defendants). The Federal Defendants in this action are: the United States Forest Service (USFS); Thomas Tidwell, Chief of the USFS; Keith Lannom, USFS Forest Supervisor of the Payette National Forest; and Nora Rasure, USFS Regional Forester for the Intermountain Regional Office, Region 4 of the USFS. (Dkt. 25.) The Court has granted a Motion to Intervene allowing additional Defendants, Adams County and the Payette Forest Coalition (the Coalition), to participate in this matter (collectively Intervenor Defendants). (Dkt. 51.)

At issue in this case is the Lost Creek/Boulder Creek Restoration Project (the Project) approved by the USFS and proposed for implementation in the Payette National Forest. The Project involves an area of approximately 80,000 acres of forested land located in the New Meadows Ranger District of the Payette National Forest in Idaho. The stated purpose of the Project is to restore the area to its historic conditions which includes more large tree stands, greater numbers of early seral species, increased fire-resilient species, less canopy cover, fewer ground and surface fuels, and a more desirable watershed. (FS077795-97, FS078885-95.) The Project proposes several activities including various logging methods and related activities; prescribed fire suppression; vegetation treatments; road management; watersheds, wildlife, and fish habitat restoration; and recreation improvements. (FS078858.)

On March 31, 2014, the USFS completed a Final Environmental Impact Statement (FEIS) for the Project. Thereafter, on September 5, 2014, the USFS issued a Record of Decision (ROD) approving the FEIS and the Project. (FS078858.) Plaintiffs have brought this action under the Administrative Procedure Act, 5 U.S.C. § 701 *et al.* (APA), alleging the USFS's approval of the Project violates the Endangered Species Act, 16 U.S.C. § 1531 *et seq.* (ESA), the National Forest Management Act, 16 U.S.C. § 1604(I) (NFMA), and the National

Environmental Policy Act, 42 U.S.C. § 4332(2)(C) (NEPA). (Dkt. 25.) The merits of those challenges are addressed in the parties' briefing on the Cross-Motions for Summary Judgment.

The USFS recently completed the bidding process for the Project's first timber harvest – the Fourth Rock Stewardship Contract – which could begin as early as June 15, 2016. On this Motion for Temporary Restraining Order (TRO), Plaintiffs request an order preventing implementation of the Fourth Rock Stewardship Contract until such time as the Court is able to rule upon the merits of the issues presented in this case. (Dkt. 45.) Plaintiffs also argue the Court should enjoin the USFS from implementing any logging or road building activities of the Project until the FEIS is corrected. (Dkt. 45 at 1-2, 9) (Dkt. 52 at 6.) Defendants oppose the Motion on several grounds. (Dkt. 48, 49.)

## STANDARD OF LAW

Injunctions and restraining orders are governed by Federal Rule of Civil Procedure 65. The analysis required for a TRO and a preliminary injunction are "substantially identical." *Stuhlbarg Int'l Sales Co. v. John D. Brush & Co.*, 240 F.3d 832, 839 n. 7 (9th Cir. 2001). The party seeking an injunction must show: 1) a likelihood of success on the merits; 2) a likelihood of irreparable harm to them in the absence of preliminary relief; 3) that the balance of hardship/equities tips in their favor; and 4) that an injunction is in the public interest. *Winter v. Natural Res. Def Council*, 555 U.S. 7, 20–23 (2008). Alternatively, if a party cannot meet the *Winter* test, they may still obtain an injunction where they can show there are "serious questions going to the merits," the balance of hardships tip sharply in their favor, there is a likelihood of irreparable injury, and the injunction is in the public interest. *Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1135 (9th Cir. 2011). This "sliding scale approach" allows a party to make a lesser showing of likelihood of success provided he will suffer substantial harm in the absence of relief. *Id.* at 1133. Under this approach, however, "serious questions going to the merits" requires more than showing that "success is more likely than not;"it requires a plaintiff to demonstrate a "substantial case for relief on the merits." *See Wildearth Guardians v. Mark*, No. 4:13-cv-00533-CWD, 2013 WL 6842771, at *2 (D. Idaho 2013) (quoting *Leiva–Perez v. Holder*, 640 F.3d 962, 967–68 (9th Cir. 2011)).

## DISCUSSION

**1.      Likelihood of Success on the Merits**

The Complaint's first claim for relief alleges the USFS violated the ESA by failing to reinitiate consultation with the United States Fish and Wildlife Service (USFWS) to ensure the Project would not likely result in adverse modification of critical bull trout habitat. (Dkt. 25.) Plaintiffs next raise five NEPA claims alleging: 1) failure to adequately disclose and analyze environmental impacts, 2) improper tiering, 3) unreasonably narrow purpose and need, 4) failure to analyze an adequate range of alternatives, and 5) failure to adequately analyze mitigation measures. (Dkt. 25.) The final three claims in the Complaint raise NFMA violations alleging: 1) failure to comply with the Payette National Forest Plan, 2) failure to comply with NFMA's diversity requirement, and 3) failure to properly designate the minimum road system in accordance with the Travel Management Rule. (Dkt. 25.)

Plaintiffs rely on their summary judgment briefing in arguing they have shown a likelihood of success on the merits of their claims or, at least, raised serious questions that they will succeed on their challenges. (Dkt. 45, 52.) Similarly, Defendants point to their briefing on summary judgment in asserting the Plaintiffs have failed to show a likelihood of success on the merits. (Dkt. 48, 49.)

The Court has reviewed the parties' briefing on the summary judgment motions and concludes the Plaintiffs have not shown a likelihood of success on the merits of their claims.[2] The Court need not decide whether Plaintiffs have demonstrated that there are serious questions going to the merits of their claims because, as discussed below, the Court finds the Plaintiffs have failed to show a likelihood of irreparable harm and that the public interest and the balance of hardships weigh in their favor.

**2.      Likelihood of Irreparable Harm**

A plaintiff may obtain an injunction only where he or she can "*demonstrate* immediate threatened injury." *Caribbean Marine Servs. Co. v. Baldridge*, 844 F.2d 668, 674 (9th Cir.

---

[2] Because of the expedited nature of this Motion and the Court's finding that Plaintiffs have failed to show the other *Winter's* factors, the Court has not discussed the likelihood of success on the merits. *See Center for Food Safety v. Vilsack*, 636 F.3d 1166, 1174 (9th Cir. 2011).

**MEMORANDUM DECISION AND ORDER - 4**

1988) (emphasis in original). A possibility of irreparable harm is insufficient. Instead, Plaintiffs must establish that irreparable harm is likely, not just possible, in the absence of an injunction. *Cottrell*, 632 F.3d at 1131; *Winter*, 555 U.S. at 23. Irreparable harm has been described as "[p]erhaps the single most important prerequisite for the issuance of a preliminary injunction." 11A Wright & Miller, Fed. Prac. & Proc. § 2948. Where a plaintiff fails to demonstrate a likelihood of irreparable harm in the absence of preliminary relief, the court need not address the remaining elements of the preliminary injunction standard. *See Center for Food Safety v. Vilsack*, 636 F.3d 1166, 1174 (9th Cir.2011).

  Plaintiffs here claim they will suffer irreparable injury from the proposed logging activity primarily because environmental injuries cannot be adequately remedied by monetary damages and, therefore, the harm is irreparable. (Dkt. 45.) Plaintiffs also point to procedural harms and their interests in enjoying the forest, the wildlife that inhabits it, and a naturally functioning ecosystem. (Dkt. 45.) The Federal Defendants argue the Plaintiffs have not shown they are likely to suffer irreparable harm by alleging only broad injuries based on the Project as a whole instead of linking their claim to the limited action involved in the Fourth Rock Stewardship Contract. (Dkt. 48.) The Federal Defendants also challenge the assertion that any potential environmental injury is presumed to be irreparable. Moreover, the Federal Defendants maintain the proposed activity will restore the area to its historical condition. Similarly, the Intervener Defendants argue the Plaintiffs' conclusory statements are insufficient, the Project activity will restore the forest, and irreparable harm cannot be presumed. (Dkt. 49.) Plaintiffs dispute whether the proposed logging will improve forest health, improve habitat, and reduce the risks of wildfires. (Dkt. 52.) These arguments go instead, Plaintiffs assert, to the likelihood of success on the merits factor which they maintain weighs in favor of granting the TRO. (Dkt. 52.) Plaintiffs further maintain the statutory violations alleged in the Complaint give rise to irreparable injuries – i.e., the Plaintiffs' protected interests as guaranteed by NEPA, NFMA, and APA. (Dkt. 52.)

  Courts have generally recognized that "[e]nvironmental injury, by its nature, can seldom be adequately remedied by money damages and is often permanent or at least of long duration, i.e., irreparable." *Amoco Prod. Co. v. Village of Gambell, AK*, 480 U.S. 531, 545 (1987); *see*

**MEMORANDUM DECISION AND ORDER - 5**

*also League of Wilderness Defenders v. Connaughton*, 752 F.3d 755, 764 (9th Cir. 2014). Thus, courts may consider whether "environmental damage harms a plaintiff's "ability to 'view, experience, and utilize' the areas in their undisturbed state." *Cottrell*, 632 F.3d at 1135. Such harms must still, however, "be anchored in a specific and detailed allegation of harm to [the environment]." *Alliance for the Wild Rockies v. Kruger*, 35 F.Supp.3d 1259, 1269 (D. Mont. 2014) (citing *Sierra Forest Legacy v. Sherman*, 951 F.Supp.2d 1100, 1111 (E.D. Cal. 2013)). That is to say, there is no presumption that an injunction is the proper remedy for a NEPA violation. *Monsanto Co. v. Geertson Seed Farms*, 561 U.S. 139, 157 (2010); *see also Cottonwood Environmental Law Cntr. v. United States Forest Service*, 789 F.3d 2130, 1090-91 (9th Cir. 2015). Injunctions "should issue only if the traditional four-factor test is satisfied." *Monsanto*, 561 U.S. at 157 (citing *Winter*, 129 S.Ct. at 380-382).[3]

Plaintiffs' arguments in this case are not sufficiently specific and/or detailed in their allegations of harm to warrant an injunction. Plaintiffs contend that the intended activities for the Fourth Rock Stewardship Contract and any commercial logging in the Project area will irreparably harm their ability to view, experience, recreate, enjoy, and utilize the particular area involved. (Dkt. 45 at 6.) Plaintiffs point to the Declarations submitted in conjunction to the summary judgment briefing. (Dkt. 33, Dec. Michael Garrity and Dec. Of Dr. Sara Jane Johnson.) Michael Garrity's Declaration discusses the interests of the members of the Alliance for the Wild Rockies, as well as his own, in using and enjoying the undisturbed, natural setting of the forest. (Dkt. 33-2, Dec. Garrity.) On behalf of the Native Ecosystems Council, Dr. Sara Jane Johnson has offered her Declaration identifying her own interests, as well as those of other members, in maintaining, enjoying, and recreating in the old forest habitats will be irreparably harmed. (Dkt. 33-3, Dec. Johnson.) These interests, while important, are too general in nature to make a clear showing of a likelihood of irreparable injury.

---

[3] The "four-factor test" referred to in *Monsanto* does not include the likelihood of success on the merits factor found in *Winter* because *Monsanto* involved a permanent injunction. *See Idaho Rivers United v. United States Army Corps of Engineers*, 2015 WL 9700887, at *6 n. 7 (W.D. Wash. Jan. 7, 2015). Because the Motion in this case is for a TRO, the *Winter* factors are applicable here.

**MEMORANDUM DECISION AND ORDER - 6**

The Fourth Rock Stewardship Contract impacts a small portion of the overall Project area – 1,011 acres of the 80,000 total acres in the Project area – and is not part of the critical habitat for bull trout. Under the Fourth Rock Stewardship Contract, the commercial timber harvest will remove an estimated 12,680 cubic feet of timber volume. The Defendants represent that the timber harvest and service work activities from this contract will move forested vegetation toward the historical range of variability and allow for prescribed fire to be more easily introduced. (Dkt. 48-1, Dec. Keith B. Lannom.) Essentially, the Fourth Rock Stewardship Contract is the first-step in a series of anticipated Project activities planned for implementation in 2016 with the intention of achieving the Project's stated purpose of restoring the forest to its historic conditions. (FS077797.) Plaintiffs' broad and generalized interests concerning the entire 80,000 acre Project area as reflected in their filings do not clearly show that the activities proposed under the Fourth Rock Stewardship Contract will cause irreparable harm to their stated interests. That is to say, the interests expressed in the Plaintiffs' filings with regard to this Motion for TRO are not particularized or linked to the 1,011 acres subject to the activities in the Fourth Rock Stewardship Contract.

Further, the Court finds the Plaintiffs have not shown that a complete injunction of all logging and road building activities for the Project is warranted here. Plaintiffs' broadly argue that "any logging or road building activities" within the Project area would cause them irreparable harm and that they suffer irreparable harm from the lack of proper NEPA analysis and NFMA violations. (Dkt. 52.) The Court finds otherwise.

Plaintiffs' generalized allegations of an abstract environmental injury resulting from the Project's logging activities is insufficient to constitute irreparable harm required for an injunction. *Sierra Forest Legacy v. Sherman*, 951 F.Supp.2d 1100, 1111 (E.D. Cal. 2013). Logging is not per se sufficient to warrant an injunction, despite the fact that certain trees will be permanently removed from the forest. *Earth Island Inst. v. Carlton*, 626 F.3d 462, 474 (9th Cir. 2010) (discussing *Lands Council v. McNair*, 537 F.3d 981, 1005 (9th Cir. 2008)). Again, the stated purpose of the Project in this case is to improve and restore forest conditions. While Plaintiffs dispute that the proposed logging activities will achieve that purpose, the Court finds the Plaintiffs arguments and allegations are too general and broad to clearly show a likelihood

MEMORANDUM DECISION AND ORDER - 7

of irreparable harms on this Motion. Were the arguments made by Plaintiffs in this case found to be sufficient, any challenge to a proposed activity made under NEPA, NFMA, and APA would warrant an injunction. That, however, is not the standard.

For these reasons, the Court finds the Plaintiffs have not met their burden to show an irreparable injury will result absent an injunction. Failure to establish this requirement is fatal to the request for a TRO under both the *Winter* test as well as *Cottrell's* sliding-scale approach. *See Cottrell*, 632 F.3d at 1135; *Winter*, 555 U.S. at 24. Accordingly, the Motion for TRO is denied.

### 3.     Public Interest

"The public interest inquiry primarily addresses impact on non-parties rather than parties." *League of Wilderness Defenders/Blue Mountains Biodiversity Project v. Connaughton*, 752 F.3d 755, 766 (9th Cir. 2014). Where the government is a party, this factor is often merged with the balancing of the hardships or equities factor. *Id.* However, the presence of "the Intervenors' interests in this case make it appropriate to consider the factors separately." *Id.*

Plaintiffs point to the recognized public interest in protecting the environment and ensuring major federal projects satisfy the requirements of the applicable statutes and regulations. *See McNair*, 537 F.3d at 1005 ("[P]reserving environmental resources is certainly in the public's interest."); *Earth Island Inst. v. United States Forest Serv.*, 442 F.3d 1147, 1177 (9th Cir. 2006) ("The preservation of our environment, as required by NEPA ... is clearly in the public interest.), overruled on other grounds by *Winter*, 555 U.S. at 22–23. This Project, Plaintiffs argue, removes the forest from its natural state by allowing logging, road construction, and related activities without the USFS having complied with all federal laws. (Dkt. 45.)

The Federal Defendants counter that an injunction is not in the public interest in this case because the Project will benefit the public by returning/restoring the forest to its historic conditions, improve habitat connectivity, increase recreational opportunities, contribute to the local economy, reduce wildfire risks, and provide watershed restoration. (Dkt. 48 at 10-11.) Pointing to public comments submitted during the administrative process, the Federal Defendants note the Project is supported by many members of the public. Moreover, the Project

was developed in a collaboration between the USFS and a diverse group of stakeholders, including the Intervening Defendants.

The Intervening Defendants argue the public interest favors denying an injunction because the Project will benefit the public's interest in maintaining a healthy forest, preventing future wildfire, providing employment, and improving the watershed and wildlife habitat. (Dkt. 49.) Importantly, the Project will provide vital revenue to the local community as well as surrounding areas. (Dkt. 49.) Further, the collaborative efforts of all Defendants in developing the Project is in the public's interest.

Having reviewed the arguments of the parties and the record herein, the Court finds the public interest in this case weighs in favor of denying the TRO. The Project's intended purpose in restoring forest conditions, reducing wildfire risks, and improving watershed and wildlife habitat all benefit the public. Plaintiffs acknowledges these activities are in the public interest in their reply brief. (Dkt. 52 at 7) ("We do not seek to enjoin other activities such as watershed and wildlife restoration..., improved recreational opportunities, snow removal, obliteration of temporary roads, and road maintenance.") Instead, Plaintiffs clarify that they only seek to enjoin commercial logging and the associated road building. (Dkt. 52 at 7.) The Court, however, finds the Project's logging and related activities are in the public's interest in this case because they provide employment and economic benefits to the surrounding communities.[4] Additionally, the public has an interest in supporting the collaborative process that was used in this case to develop the Project. For these reasons, the Court finds the public interest weighs in favor of denying the injunction.

### 4. Balance of Hardships/Equities

Although "the balance of harms will usually favor the issuance of an injunction to protect the environment," the law does not require abandonment of a balance of equities analysis just because a potential environmental injury is at issue. *Carlton*, 626 F.3d at 475. Rather, courts

---

[4] Plaintiffs argue the Defendants only speculate as to the economic harm an injunction may cause to Adams County and the contractors. (Dkt. 52 at 7-8.) The Court disagrees. The Declarations provided by Defendants sufficiently identify economic harms that would result from an injunction in this case to the contractors but, more importantly, to the county and public. (Dkt. 29, Dec. Mike Paradis) (Dkt. 48-1, Ex. A, Dec. Keith B. Lannom) (Dkt. 50, Dec. Mac Lefebvre.)

**MEMORANDUM DECISION AND ORDER - 9**

must "balance all of the competing interests at stake" including potential economic harm. *Id.* ("Economic harm may indeed be a factor in considering the balance of equitable interests."). Environmental harm may be outweighed by other factors such as reducing the risk of forest fires, employment opportunities, loss of project funding, and other benefits a project may provide to the public. *See e.g. W. Watersheds Project v. Salazar*, 692 F.3d 921, 923 (9th Cir. 2012); *McNair*, 537 F.3d at 1005. "The assignment of weight to particular harms is a matter for district courts to decide." *Carlton*, 626 F.3d at 475.

The public interests in preserving nature and avoiding irreparable environmental injury, Plaintiffs argue, tips the balance in favor of an injunction. (Dkt. 45.) The Federal Defendants counter that an injunction would delay implementation of the Project and, as a result, delay restoration of the forest conditions needed during the only seasons when such treatments can be undertaken. (Dkt. 48 at 13.) Moreover, the Federal Defendants assert, an injunction would substantially harm the USFS's ability to manage forest lands, devalue two years of collaborative work to develop the Project, and possibly require the USFS to forfeit unused partnership funds earmarked from recreational improvements. (Dkt. 48.) The Intervening Defendants similarly argue the balance of harms weighs against an injunction because the Project benefits the public and forest, will bring jobs and revenue into local communities, and reduces the danger of wildfire. (Dkt. 49.)

The Court finds the balance of equities/harms weighs against granting the TRO. The Project's intended purpose is to improve environmental conditions by restoring the forest to historical conditions which will improve watersheds and habitat and reduce wildfire risks. The surrounding communities will benefit from the Project through increased employment and revenue. For all of the reasons stated herein, the Court finds the balance of equities/hardships favor the Defendants.

## CONCLUSION

Based on the foregoing, the Court denies the Plaintiffs' Motion for TRO. "A preliminary injunction is an extraordinary remedy never awarded as of right." *Winter*, 555 U.S. at 24. In this case, the Plaintiffs failed to clearly show they are likely to suffer irreparable harm absent an injunction being issued. *Id.* Additionally, the public interest and balance of harms/equities

MEMORANDUM DECISION AND ORDER - 10

weigh in favor of denying the injunction. *Id.* The Court's ruling herein addresses only whether injunctive relief is appropriate at this stage of the litigation. This Order is not a final determination on the merits of the substantive issues presented in this case.

## ORDER

NOW THEREFORE IT IS HEREBY ORDERED that Plaintiffs' Motion for Temporary Restraining Order (Dkt. 45) is **DENIED**.

DATED:  **June 14, 2016**

Honorable Edward J. Lodge
U. S. District Judge